yes thank you your honor may it please the court my name is David Cortman I represent Calvary Chapel Dayton Valley I'll attempt to reserve three minutes for rebuttal if I'm able Calvary Chapel is a small church of a few hundred people they adhere to the Bible's command of gathering together for prayer and worship and to the church meeting these spiritual needs is no less essential than meeting physical needs such as food and water and while the state may disagree the free exercise clause does not permit the state to make such value judgments Calvary Chapel has endured the state's discriminatory treatment for nearly 10 months now that's nearly 40 weeks of worship services that have been either completely banned or subject to much limited numbers and size of attenders and when the state first shut down all worship services it allowed to stay open what it deemed to be essential businesses that included dozens of retail businesses manufacturing plants public transportation and the like and a few months later when the state did open up religious services it limited them to less than 10 people at a time that's similar to the count to the Roman Catholic Diocese recent opinion but it allowed at the same time retail businesses including cannabis stores at social distancing limits I don't want to I don't want to interrupt too much what you're saying here but this is what you've said in your brief and I've got some specific questions following out of the Roman Catholic Diocese case so if I may let me ask you to start with whether Roman Catholic Diocese that's what I'm going to call that case changes the meaning of in quotes neutral and generally applicable that we know from the employment division versus Smith and Esso in what way sure I don't think it changes the meaning of neutral and generally applicable I think what it did in this case it expanded the universe of comparable uses as this court is aware there's been a debate across the country over what is a proper comparable use is a laundromat is a liquor store is a big box store what Roman Catholic Diocese did it recognized once and for all that these uses were indeed similar to religious worship services and house of worship what's interesting here is not only do we have those similar uses we do have better treatment of liquor stores and retail businesses but we also have much stronger comparators we have the casinos we have the restaurants the bars the gyms and those type of facilities so I think the short answer I think I think you would agree that the Supreme Court has changed its composition and has changed the focus in terms of how these comparators make a difference we've got the the of course the Smith case we have the city of Lekouma that on the other end but the comparators never really were much of a factor before it was really whether there was religious animus the Supreme Court in the Roman Catholic Diocese case however seemed to be saying that when you have these comparators ID where you have secular businesses that are being treated better than religious communities particularly when they have religious communities have a very good record of comply with the social distancing and the like that in effect takes the place of religious animus and moves us up the strict scrutiny you agree with that I do in part I don't and here's what I mean by that religious religious animus is enough to bring it up to strict scrutiny although I don't think it is required at the court in Roman Catholic Diocese notice there was possibly some targeting and some hostility but it set that aside and said regardless even if we don't find that there's still a violation for being not neutral and not generally applicable and your honor if we look to Lekoumi that that your honor mentioned it was looking at analogous conduct also the hostility in that case was only joined by two justices it was not a majority opinion and so it looked at the analogous conduct of killing and what it said was as well if you killed an animal in hunting or you use it for a restaurant that would be permissible but if you killed it for an animal sacrifice that would not be so the neutral and generally applicable comparison if you will I think is similar to what was done in Smith and similar to what was said in Lekoumi but I think what what Roman Catholic Diocese did was a couple of things number one it reiterated that standard but it expanded the I guess the universe of analogous conduct in these type of cases in COVID cases and not only are the uses that we've been saying are similar you know the restaurants and bars and and the gyms similar but again what argued to be in other cases the liquor stores the big-box stores the laundromats a lot of court said we're not similar because of the number of people along that line that you know of course justice Gorsuch and justice Kavanaugh specifically referenced as indeed did the procuring opinion these various liquor stores etc etc etc and saying that the religious entity was treated one way they were treated in another way and it seems that they were saying if you have that you're under scrutiny strict scrutiny and it's very difficult to overcome that is that your position that absolutely is and I think what's important is is that was the first Supreme Court majority opinion in these types of cases and so a lot of people were citing to South Bay which was a concurrence by the chief there was no majority opinion there the important part about Roman Catholic Diocese is that was the first Supreme Court majority opinion and exactly as your honor mentioned it ruled that when you treat these type of secular comparators better than you do churches then you're at strict scrutiny so what is for your client what's the fire code capacity the fire code capacity is 200 people your okay so the fire code capacity is 200 so what comparators given that yours is is 200 so 25% of 200 would obviously be 50 who's treated worse I mean who's treated better rather well who's treated better are casinos they have in fact I'll go through the list but all of the other uses under directive 21 have a 50% usage with no hard cap all right I'm sorry let me let me ask a better question who's treated better under the directive that's currently in effect all all retail businesses are treated better the same types of business our power retail business is treated better given that you were on fire code capacity is 200 because they're allowed to have 50% without any hard caps so for example if you have a store if you have a restaurant if you have a big-box store that was mentioned in Roman Catholic Diocese big-box store big-box store yes but restaurants as I understand it under the current system are 25% of the listed fire code capacity there is no lesser but with you if you're 200 you get 50 right that's correct except for there's no hard cap even under the current directive 35 all of those uses are still treated better because there is no hard cap so if you have a restaurant if you have a casino a casino that holds can still have hundreds to thousands of people so the differential treatment is the fact that there's a percentage basis but there's a hard cap with churches but no hard cap with with any of the other uses and I think that's the violation here because they're not treated the same my colleague mentioned this the more recent directive we're actually dealing in this case specifically with Directive 21 are we not we are and and what was challenged and found not to be moot already in this case which was a correct ruling is that Directive 21 is being challenged in fact if you look at Roman Catholic Diocese the directive that they challenged was already changed at the time of the hearing but the directive that the court ruled upon was the original one that was challenged and what the court said which is which applies here is that the case is not moot because the state can easily go back to it and that's exactly what that issue so for our purpose what let's just assume arguendo that we agree that under Roman Catholic Diocese that the churches particularly with the respect of the cap are being treated differently and that we're dealing with Directive 21 what would what should we be doing here that gets a strict scrutiny should we be sending this back to the district court to make a determination there's no evidence so far other than just you know some declaration but there's been no evidentiary hearing the district court obviously was trying to review this on a rational basis so if you were in our situation arguendo if we agreed with you what do we do we send it back do we stay with 21 we have to go okay are we even in a position to evaluate any changes that the governor's office has made in the directive the court should rule on Directive 21 because that's what's being challenged here and it's not moot the court should either issue the preliminary injunction or send it back down instructing the lower court to issue the preliminary injunction and the reason for that is the question is are the preliminary injunction standards satisfied now to this court and the answer is they clearly are based on Roman Catholic Diocese because it's a legal question as to when you treat all these other secular uses better you're violating the pre-exercise clause because it's not neutral and generally applicable even the minimum requirement of neutrality is not met and as to the evidence your honor there was a hearing counsel the injunction that you would seek would be exactly what because my question is for example if you said treat us no worse than casinos I would understand that but you want to go beyond that is it treat us no worse than anybody that is here so that as long as you allow the biggest warehouse in the world to be unlimited you have to allow the churches to be unlimited I have a little more trouble with that because in New York as I understood it what they did was simply it took them back to a an area in the yellow which the churches were willing to live with they didn't want to live with the red and orange zone so in your case is there any limitation you're willing to live with and if so which one and why absolutely the first thing I'll say is is we are not challenging any of the mask wearing distancing hand sanitizing I just want to make that clear the church is only challenging the numerical limit and what the court did in Roman Catholic Diocese it didn't put a number in what it said was when you treat houses of worship worse than comparable secular uses that violates the pre-exercise clause in this case because we're challenging directive 21 I wouldn't just name a casino or particularly use although we can give examples and we have them so what I would say under directive 21 the church should be allowed 50% usage because that you can list the uses so 50% uses and what I would add is is per room because you have movie theaters you have schools that are allowed that cap per room where the church is only allowed that cap for one part of their building it's not separated per room so that's how I would answer your honest question do the same exact thing this under 21 basically most of the major uses are 50% per room let's say in general and that's what you say treat us no worse than them okay let me ask you one quick question you may want to save some time in the per curiam opinion the court referred to this specific case in a footnote to as well as the South Bank case and did so in connection with referred to them as less restrictive requirements what if anything should we make of the reference to this case in footnote to yes your honor the court only said that the restriction in New York of 10 people in the red zones and 25 people in the orange zones was more restrictive restrictive than 50 people here and 100 people in South Bay that's true as a matter of fact so it was more restrictive that's all the court said in the footnote what I would add here is is that although we have 50 people that are allowed in the church casinos are allowed thousands restaurants and bars are allowed hundreds so in comparison it is restrictive here and if it's principle with the court I'd like to say the remainder of my time that'll be fine so now we have a responding on behalf of mr. newbie I guess you're going first and as I understand that you have 12 minutes of the time is that correct that's correct your honor and then mr. Hardy will have three minutes is that right that's correct very well okay please mr. newbie would you like to proceed thank you your honors good day my name is Craig newbie I'm deputy solicitor general for the state of Nevada representing Nevada's governor and Nevada's attorney general in this case as of last night more than 280,000 Americans have died from COVID-19 including more than 2,300 Nevadans Nevada has a significantly higher per capita rate of new cases of COVID-19 in California and New York record percentages of Nevada hospitals beds are occupied new vaccines will begin being distributed before Christmas but not before this increased surge continues the slow COVID-19 spread Nevada has instituted temporary restrictions on mass gatherings counsel let me just just ask you this for a second I mean like the Supreme Court I think we on this court all recognize the severity and seriousness of the COVID-19 threat what we're dealing with here is whether the citizens who are impacted by the directive that issued by the governor's office are being treated equally or at least constitutionally the same I'd like to know your thoughts you of course are familiar with the Roman Catholic Diocese case but in addition to that we recently the Supreme Court in a brief order and in the case of the Harvest Rock Church vacated the district court opinion sent the case back to our court to send to the district court to review in light of the Roman Catholic Church case now that that situation is a little bit more complex California where I am from as well we have lots of tears and we have some very very difficult restrictions and yet the Supreme Court sent this back what what what does the Supreme Court's vacation of the Harvest Rock Church case tell us about what we should be understanding from the I think what Harvest Rock instructs us in in terms of us attempting to understand what the Supreme Court decided Thanksgiving week in in Roman Catholic Diocese is that one California and Nevada have different restrictions much less severe as used repeatedly throughout per curiam opinion through justice Kavanaugh's concurrence and also used in Chief Justice Robert's dissent in that case there's different level of restrictions in how the Supreme Court treated Harvest Rock Church where in tier one counties which your honor is more familiar with exactly than I'm but tier one is a bit of a misnomer as almost the entire population of California is within tier one counties council with respect is it a question of how strict something is the issue or is it whether churches within whatever tier you're in or zone is treated differently than essential businesses and secular business isn't that the issue we're dealing with here I think I think the answer to that is both in terms of there's a difference in terms of the numerical restriction but there's also multiple other factors for a court to consider all of these cases that were risen in the context of injunctive relief which is a fact based determination pursuant to the winter factors in terms of weighing relative hardships weighing the public interest in weighing in identifying factually what the differences are in terms of at one level looking at the numbers themselves into looking at the compelling interest that a state like Nevada or California would have based on its current disease level and also let me ask you a specific question about Nevada correct me if I'm wrong on this my understanding is that of course Nevada has no income tax but it gets its from the gambling industry so there's a strong if I understand it correctly a very strong motivation on the part of the state to have the gambling industry be in a full tilt but if you have a casino and on Blackacre and you have a church on Whiteacre and the casino is allowed for whatever reason to have a 50% of the fire code which turns out to be 50 people that's not justifiable is it under the Roman Catholic diocese case well your honor there's two points to that in response to that first that hypothetical is not the facts that are currently on the ground as addressed during questioning by your colleague judge Bennett under directive 35 Calvary Chapel Dayton Valley is subject to the same 50 person 25% limit as casinos and virtually any business in Nevada currently but what about the cap we have two cases here today and I but in this first case Calvary Chapel Dayton Valley has an occupancy level of 200 the cap does not come into play as the 35 because it's a 25% cap which why are we talking about 20 I mean 35 this is about 21 is it not this case is this case is about directive 21 which has been terminated by the state state of Nevada a month and a half ago but that that was also true of what happened in the Roman Catholic diocese the the limitations that they were reviewing had been terminated by the state and made more generous so I think at least my understanding is perhaps my colleagues feel differently is we're reviewing directive 21 not 35 you disagree with that I don't disagree that directive 21 is what what is what has been challenged and on appeal to this court returning counsel counsel on that point if we were to agree with your friend across the aisle that there are provisions of directive 21 which is not now in force with regard to which a preliminary injunction should be granted but now what's in force as a matter of fact no one disputes it is directive 35 but if we find that what's in 21 doesn't pass strict scrutiny or doesn't appear to pass strict scrutiny what in the state of Nevada's view should we do in terms of our order given that 35 is now in effect and given as Judge Smith pointed out there was a similar situation in New York but the Supreme Court enjoined the prior directive from Governor Cuomo what should we do here your honor I think I think that the clear direction in how we respond has been provided to us by the Supreme Court in its decision to have Harvest Rock Church remanded to the district court for consideration in light of Roman Catholic diocese but without an injunction and entered pending that reconsideration so the actual decision but in the actual decision they wrote as opposed to their whatever one paragraph or two sentence order in the actual decision they wrote they enjoined what was going on in in New York so your view is that if we find directive 21 not passing strict scrutiny we should do what they did in the and this case to the district court for determination in light of the Catholic diocese case which I'm sure the district court wouldn't thank us back of direction but that's that's a view of what we should do yes that is that is my view of what should be done that is how the Supreme Court itself has treated this new decision in Roman Catholic in terms of how it's addressed subsequent cases involving this same issue council if I could take you back to 35 in an argument that you seem to be about to make saying well I mean 35 doesn't really hurt these folks because 25% is 50 and I was gonna say if that's the case and then across the board why wouldn't you be willing to just take off the cap and treat them the same as the vast majority of businesses at 25% or if you went back to 50% at 25% and no cap you're right Dayton Valley would be in the same position but they would be mostly happy maybe other churches that want a little bit more but can you give me some specifics other than just with no hard cap as other roughly comparable businesses which you're really doing almost all of them right except for these very large retail groceries so what would be wrong with that your honor I think first I think in terms of a percentage cap that certainly is an option for this court if it had a more developed factual and procedural record we're not in the situation here as alluded to during earlier factual who has the factual basis there that is if your implicit assumption is that at 25% capacity churches and synagogues are in some way you know closer together that people in churches don't follow rules whether as in casinos they always follow the rules wouldn't you have to put on some of that record your honor certainly if the district court below had conducted an evidentiary hearing on these types of these types of fact-based questions certainly I would be able to all point to something within the record to answer that question specifically on behalf of the baddest governor we just don't have that record here in the same sort of way as what was addressed in Roman so okay so counsel as the attorney for the state of Nevada give me your best argument as you are here today as to why for churches synagogues mosques and other houses of worship they have the lesser and all these other entities and organizations zoos aquariums a variety of other things don't have the lesser so explain give me your best argument here today as to why that is an acceptable limit for houses of worship but not for all the rest of these under directive 35 that don't have the lesser honor with regards to directive 21 no my question is 35 my question is as to 35 as to why as to why there's a specific per person capped in 35 or just to justify it as best you can for houses of worship it's the lesser of and for so many others it's not the lesser of the argument for the per person cap in the context of religious services is the exposure that's there the question first of all miss assumes that is a restriction on religious services generally it certainly is not while Nevada does not have quite as temperate of a climate as you have your honor in Hawaii there is the opportunity and availability without numerical limitation limitations for outdoor services and if it's into the type of mass gatherings close thing in the governor made a determination that there are differences in terms of the nature of the activities the fact that the very nature of what religious services are are congregate coming together as one but but that's not true and that's not true in casinos right casinos are different as found by the district court on the record in terms of is this court bound to look in terms of comparable simply at a number alone or to look at the overall directive itself in terms of the increased enforcement ability that casinos have increased regular but council with respect I read that in your brief and I couldn't stop laughing I mean the reality is that when you have all these people in the casino they're not paying attention to any rule I don't care how well it's regulated so I don't see how you justify treating religion worse than the casinos houses of worship whether it's under 35 or whether it's under 21 what possible argument did you have that answered Roman Catholic diocese on that score in your honor the district court below found that they needed to take into account in terms of gaming in terms of the regulatory structure not not specifically with regards to participants who may buy stereotypes engagement and frivolous fun activities but in terms of the regulated owners of those facilities in terms of the restrictions in terms of additional specific health training for its employees in terms of having COVID testing on-site having COVID-19 isolation abilities for people and the prior to Roman Catholic coming coming about so it made the determination based on a rational basis but how would it bear under strict scrutiny it certainly isn't it is a for purposes of considering strict scrutiny it would be necessary for for the district court on remand to consider the factual basis in terms of weighing in terms of the compelling interest that Nevada has the whether this is the most tailored method tailored method in terms of achieving this compelling interest and then in the context of making that determination is just the first of the four factor winter test to determine whether Calvary Chapel Dayton Valley is entitled to an injunctive let me unless my colleagues disagree we let you go away over the time you're supposed to have 12 minutes and we're gonna give mr. Hardy his full three minutes but do either of my colleagues have additional questions for mr. newbie before we turn to mr. Hardy who has the other part of the argument for the state no I think we'll get mr. newbie again right in the next case yes we will indeed we will indeed so we'll have the opportunity to have speaks with him then I'm sorry mr. mr. newbie I meant we'll have the opportunity to have another dialogue with I look forward to it your honor all right mr. Hardy you have three minutes please thank you your honor Brian Hardy with the law firm of Marquis are bought on behalf of the Lyon County Sheriff I'm not on behalf of the state I am specific to the sheriff who has been the enforcement and and frankly to answer I think justice then it's earlier question there is no justification here the sheriff acknowledges the government officials may need to make difficult decisions when faced with the public health crisis but since the onset of the public health crisis earlier this year the sheriff has steadfastly refused to first the directives are in question we the sheriff believes them to be facially unconstitutional which is consistent with what I think the Roman Catholic Diocese case holds and where this court should go aside from the governor seemingly limitless emergency powers the open discrimination against places of worship and those who assemble to exercise their faith raise serious First Amendment issues the sheriff understands the gatherings are a concern when trying to stop the spread of the virus however the rights of the the severe restrictions on places of worship are simply incompatible with the lesser restrictions on businesses unilaterally deemed essential by our governor it is concerning that the sheriff to the sheriff that the governor has deemed it safe it did it unsafe to go to church but it's perfectly acceptable to pick up a schedule one drug spend the afternoon at the poker table in a full casino and so as I understand the sheriff's position in the brief it's we think the governor is wrong but don't issue any injunction that stops the sheriff from doing his job well well first of all I think that we can look to Justice Gorsuch in the Como case but who knew public health is so perfectly aligned with secular convenience what so what what is this what does the sheriff want us to do the sheriff thinks that in this particular issue we have a governor who really represents one maybe a one and a half counties what what does the sheriff want us to do in this case and join we would we would say that you would enjoin the state consistent with the relief that has been sought with that's been sought by Calvary Church but this also provides an opportunity for the court this court and or you know we get the writ going up Supreme Court to affirm that the authority of local officials and law enforcement to follow the Constitution even when doing so is contrary to the edicts of state officials and that's the authority that we have in this particular the sheriff has the authority as a local official and we look towards a number of different cases that you can see and in fact in in the diocese case justice Gorsuch is applying on Jacobson and in Jacobson the court is stated that that there that it's well established I think that constitutional principles excuse me constitutional principally and trust the health and safety of communities to the elected officials who are most accountable to the people and most knowledgeable of the needs of their communities and it's those individuals such as the sheriff and the county commissioners in Lyon County that are residents those residents don't get a chance their vote really doesn't count when it comes to voting for the governor who issues these edicts who is responsible to them is the local officials the sheriff and the county commissioners and they should be able to assess consistent with the CDC directives what is necessary for their local community and enforce those things as long as they're neutral and constitutional enforce those things are necessary for the health and safety of their community thank you I see my time other questions by my colleague okay hearing none we go back mr. Cortman has a little rebuttal time thank you your honor just a few points in response number one directive 21 is what's legally at issue here the mootness question goes exactly to that should we still be ruling on directive 21 according to Roman Catholic Diocese the answer is yes even looking at directive 35 which is not at issue it still violates the church's rights because retail businesses are allowed at 50% with no cap and under Roman Catholic Diocese those are proper comparators let's just say like let's say for a minute that we agree with you what what should we do what should we order in this case I would order for an a plenary injunction to be issued the principal ruling would be that it violates the free exercise clause to treat secular uses better than religious uses I would go on to say that what we're looking at is directive 21 and that a 50% cap limit with no cap per room should apply to churches just like all the other comparable uses under directive 21 one to to read the same for churches as it does for any of the non or any of the secular businesses is that right yes that is correct I think that's what Roman Catholic Diocese tells us and we know what the comparable uses are in that case retail businesses liquor stores laundromats we also have here restaurants bars casinos and similar types of use well as Roman Catholic cases the court basically enjoying the enforcement of the governor's severe restrictions on the applicant's religious service which I gather was the caps in this particular case what are we looking at the caps yes so I the way that I would look at this case is the same treatment for the best comparable secular uses and so what I would say is is that if the state decides that all retail businesses all the ones we've named casinos bars restaurants are should be the same as churches without a hard cap that doesn't apply to everybody else so casinos retail businesses at 50% the church should be the same it's a simple ruling follows Roman Catholic Diocese well how does that exactly work with the governor presumably at the present time not enforcing directive 21 but instead enforcing directive 35 I mean how exactly would that type of injunction work with regard to providing notice to the state of what they can and can't do if the governor is proceeding right now on 35 would this be these are what are in effect if you ever try to reinstate 21 or would this apply to your enforcement of 35 also even though the terms there are different in your view how would that affect the governor trying to enforce 35 I think it would apply the same because the court would be giving the principle that whatever sex or whatever directive comes now or in the future the principle for the governor is however you treat retail businesses restaurants casinos in the future you have to treat churches the same we know under directive 35 retail businesses are at 50% so that same ruling under directive 21 would guide the governor under directive 35 because he's still treating retail businesses at 50% but yet churches are only at 25% with a 50 hard cap so either of my colleagues have additional questions yes very quickly just to be clear there as I understand it under 35 restaurants bars casinos etc are at 25% it is it is retail businesses apparently which you know could be I take it as largely or significantly grocery stores big box stores etc am I right about that as to what says right now you are correct so but you're pushing not only for equality with casinos bars and restaurants but equality with Sam's Club Walmart the biggest Kroger in Vegas yes the same comparables that were used in Roman Catholic diocese of retail businesses although the first would in fact give you most of the relief that you would probably really want that is if you're treated no worse than casinos you're probably in pretty good shape that's probably true looking at the directives I think that's right thank you sir appreciate it thank you other questions by my colleagues we thank all counsel in this case for their argument I guess we're not going to see you in the next one department but we thank you for your argument we are I just admit Calvary Chapel Dayton Valley versus this alike at all and we will now go to the last case of the day which is Calvary Chapel Lone Mountain versus this elect
judges: Boggs, M. Smith, Bennett